FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2017 DEC 20  PM 1:04

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

JACQUES DURR, M.D.,

       Plaintiff,

vs.                                     Case No. 8:17 cv 3045 T30 AEP

DAVID SHULKIN, M.D., Secretary of
the Department of Veterans Affairs,

       Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JACQUES DURR, M.D. ("Plaintiff"), hereby sues Defendant, DAVID SHULKIN, M.D., Secretary of the Department of Veterans Affairs ("Defendant") and alleges as follows:

### INTRODUCTION

1. This action is brought under the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-16(a) and Age Discrimination in Employment, 29 U.S.C. § 633a(a).

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3. Defendant's unlawful conduct was committed within the jurisdiction of the Tampa Division of the United States District Court for the Middle District of Florida.

4. Plaintiff has performed all conditions precedent necessary to the maintenance of this action, and has exhausted all administrative remedies which are required before

TPA-047815

an action may be instituted.

5. Defendant is an employer under the Title VII and the ADEA.

## PARTIES

6. Plaintiff was a resident and citizen of Pinellas County, Florida at all times relevant to this action.

7. Defendant was an employer at all times relevant to this action.

## FACTUAL BACKGROUND

8. Plaintiff is a medical doctor licensed in the state of Florida.

9. Plaintiff was employed at the Department of Veterans Affairs Bay Pines Medical Center from 1992 to 2008.

10. In 2008, Plaintiff was Staff Nephrologist.

11. Plaintiff was constructively discharged in 2008 based on his age, gender and retaliation for engaging in EEO protected activity.

12. Dr. Dominique Thuriere ("Thuriere") participated in the discrimination and retaliation against Plaintiff by accepting to serve on the Summary Review Board.

13. On April 11, 2014, Durr and the Agency engaged in settlement negotiations of a pending federal lawsuit in Durr v. Shinseki, 8:11-cv-01837-AEP (M.D. Fla.) ("Durr I"), alleging unlawful discrimination and retaliation by the Department of Veterans Affairs. Durr's Settlement Agreement and Release was executed by the Bay Pines Director, Suzanne Klinker, on September 24, 2014. Klinker is Thuriere's direct supervisor. Thuriere was Chief of Staff at that time.

14. Thuriere was a witness for the VA in Durr I and filed a sworn affidavit describing her

role in Plaintiff's forced separation from the VA.

15. In the fall of 2014, after Durr I settled, the Chief of Medicine Service position became vacant at Bay Pines. The hiring procedure followed was that within 10 days after the application window closes, the HR official responsible for the vacancy prepares an electronic list of minimally-qualified applicants and their applications are forwarded to the selecting official for consideration. This is called a Certification List. Once a selection is made, the Certification List is returned to Human Resources by the selecting official for further processing. The normal hiring process for chiefs of medicine required a panel interview which ranked candidates and a second level interview with the selecting official. The pentad, a group which included the Director of Bay Pines, also interviewed the candidates with the highest scores.

16. This Chief of Medicine position reports directly to the Chief of Staff, Thuriere.

17. The vacancy was posted three times.

18. Durr did not know of the first posting in the fall of 2014 and did not apply.

19. Durr applied in response to the second posting (March 2015).

20. A 14-day application window applied to the second posting of the Chief of Medicine Services vacancy.

21. The application window closed on March 25, 2015 at 11:59 p.m.

22. The "how to apply" section of the Job Posting states in part:

> HOW TO APPLY:
>
> All applicants are encouraged to apply online but may apply via Fax (instructions are below). **You may also express your**

> interest, obtain additional information about the position, or seek application assistance by emailing your C.V. to rachelle.seybold@va.gov.

23. Durr created a USAJobs.com account under Username "Jacques.Durr2015" on March 25, 2015.

24. Durr completed a resume online through his USAJobs account on March 25, 2015 that was customized for the chief of medicine position at Bay Pines. This alone was also sufficient to apply. Materials can be added after the resume is uploaded.

25. On March 25, 2015, at 11:49 p.m., Durr sent Seybold the following email applying for the position:

> From: Jacques Durr <jacques.durr@gmail.com>
> Date: Wed, Mar 25, 2015 at 11:49 PM
> Subject: Application for the position of Chief of medicine Bay Pines VA
> To: Rachelle.Seybold@va.gov
>
> Dear Ms. Seybold,
>
> Today Dr. John Sinnott, Chair of Medicine at USF, urged me to apply for the position of chief of medicine at the bay Pines VA.
>
> I went online and tried to submit the documents but discovered that you cannot upload any documents that are more than 3 mb. I read what was required for the application and submit it in the documents attached to this e-mail.
>
> I feel qualified for this job. Indeed I have served as chief of nephrology at Bay Pines and have created the service of nephrology there.
>
> Sincerely,
> Jacques Durr, MD

26. The USA Jobs website did not accept his voluminous attachments.

27. Durr sent additional emails to Seybold on March 26, 2015 at 12:01 a.m. and 12:10

a.m. indicating that the email he sent before midnight bounced back, and attaching the required material for his application.

28. Durr sent Seybold additional documents by email on March 26, 2015 at 12:26 a.m.

29. When she arrived at work that morning, Seybold sent Durr an acknowledgment of his emails on March 26, 2015 at 8:41 a.m., stating:

> Good morning Dr. Durr,
>
> <u>Do not worry, I received all necessary documents and will load them into the system for you to receive consideration. You will receive email notification once I have completed it.</u>
>
> Thank you,
>
> Rachelle N. Seybold, Client Services

30. Durr was told in writing he would be considered by Human Resources, and had received the email notification mentioned above.

31. No candidate was selected from the applications submitted for the second posting, although all the other applicants were scored, rated and some were even interviewed.

32. Plaintiff was intentionally kept off of the Certification List prepared after the second posting, and was not informed about it, but rather was led to believe that he was on the list.

33. The VA deemed his application untimely even though Durr was told he would be considered.

34. To be considered, an applicant must appear on the Certification List.

35. If an application is deemed untimely the applicant must be informed by HR, and must reapply during a subsequent posting to be considered. (I.e., to be placed on

-5-

the Certification List).

36. Durr was never told his application in response to the second posting was deemed untimely, contrary to VA Handbook 5005. In fact, he was told that he was considered for the position.

37. Durr did not know that he needed to reapply when the vacancy was posted a third time, since, nobody had contradicted Seybold's e-mail response stating he was being considered, and since the subsequent e-mail notificaction he received had confirmed what Seybold had written in her March 26, 2015, e-mail.

38. The only reason Durr personally visited HR, during the third vacancy, was to submit a new cover letter along with his prior proficiency reports, because he wondered why he had not been interviewed, and felt that his prior accomplishments at that place (recounted in these reports) should help him get at least interviewed.

39. Since Durr had personally visited the HR specialist during the 3rd vacancy, he had to be put on the Certification List and hence was eligible for consideration.

40. When Thuriere realized that Durr had to be put on the third Certification List, she abandoned her plans for interviews with a screening panel who would identify final candidates.

41. Instead, Thuriere hired another candidate, from that list, Dr. Jennifer Pearson, without any interviews and without Pearson meeting with the Pentad, as was practiced for both, the first and second vacancy postings.

42. Thuriere had not anticipated that Plaintiff would visit HR again during the third vacancy posting to submit additional material, which obligated HR to put him on the Cert List.

43. Durr was led to believe his application in response to the second posting was sufficient, and that he was in the applicant pool.

44. Thuriere deviated from the standard hiring process adopted and hired Pearson on the spot from the 'Cert List' to prevent Durr from being assessed by the screening panel.

## COUNT I -RETALIATION

45. Plaintiff realleges paragraphs 1 through 44 as if fully set forth herein.

46. Plaintiff was denied employment based on his prior EEO protected activity which included his lawsuit in <u>Durr I</u> and entering into a settlement agreement concerning <u>Durr I</u>. The settlement was covered by local media and quoted Durr as to his EEO activity.

47. Plaintiff has been damaged by the conduct of Defendant.

WHEREFORE, Plaintiff requests this Honorable Court to:

    A. Enjoin Defendant from engaging in any employment practice violative of Title VII.

    B. Grant a judgment requiring Defendant to pay to Plaintiff any back wages and back benefits found to be due and owing at the time of trial, compensatory damages in an amount to be proved at trial, and prejudgment interest thereon;

    C. Grant Plaintiff costs and an award of reasonable attorney's fees; and

    D. Grant Plaintiff such further relief as the Court deems just and equitable.

## COUNT II - AGE DISCRIMINATION

48. Plaintiff realleges paragraphs 1 through 44 as if fully set forth herein.

49. Plaintiff was denied employment based on his age.

50. The candidate selected for the Chief of Medicine is substantially younger than Plaintiff and is less qualified.

51. Plaintiff has been damaged by the conduct of Defendant.

WHEREFORE, Plaintiff requests this Honorable Court to:

A. Enjoin Defendant from engaging in any employment practice violative ADEA.

B. Grant a judgment requiring Defendant to pay to Plaintiff any back wages and back benefits found to be due and owing at the time of trial, liquidated damages, and prejudgment interest thereon;

C. Grant Plaintiff costs and an award of reasonable attorney's fees; and

D. Grant Plaintiff such further relief as the Court deems just and equitable.

## COUNT II - GENDER DISCRIMINATION

52. Plaintiff realleges paragraphs 1 through 44 as if fully set forth herein.

53. Plaintiff was denied employment based on his gender.

54. The candidate selected for the Chief of Medicine is female and less qualified.

55. Plaintiff has been damaged by the conduct of Defendant.

WHEREFORE, Plaintiff requests this Honorable Court to:

A.  Enjoin Defendant from engaging in any employment practice violative of Title VII.

B.  Grant a judgment requiring Defendant to pay to Plaintiff any back wages and back benefits found to be due and owing at the time of trial, compensatory damages, and prejudgment interest thereon;

C.  Grant Plaintiff costs and an award of reasonable attorney's fees; and

D.  Grant Plaintiff such further relief as the Court deems just and equitable.

Respectfully submitted,

BERMAN LAW FIRM, P.A.

By: */s/ Craig L. Berman*
Craig L. Berman, Esquire
BERMAN LAW FIRM, P.A.
Fla. Bar No. 068977
111 Second Ave. N.E.; Suite 706
St. Petersburg, FL 33701
Phone: (727) 550-8989
Fax: (727) 894-6251
craig@bermanlawpa.com

**ATTORNEY FOR PLAINTIFF**