UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACQUES DURR, M.D.,

    Plaintiff,

v.

SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS,

    Defendant.
_____/

Case No. 8:17-cv-03045-T-30AEP

**FEDERAL DEFENDANT'S RESPONSES TO**
**THIRD SET OF INTERROGATORIES BY PLAINTIFF**

Pursuant to Fed. R. Civ. P. 33, defendant, the Secretary, Department of Veterans Affairs, hereby responds to the plaintiff's Interrogatories.[1] As discovery in this lawsuit is underway, defendant bases these responses upon information now known, and reserves the right to supplement these answers if additional evidence so warrants.

Dated: April 8, 2019

MARIA CHAPA LOPEZ
United States Attorney

By:   /s/ Scott H. Park
Scott H. Park
Assistant U.S. Attorney
Identifying No. USA084
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7588
Email: scott.park@usdoj.gov

---

[1] According to defendant's file, this is plaintiff's Second set of interrogatories.

1

**General Objection**

Plaintiff served a set of interrogatories in this case in December 2018, consisting of 17 interrogatories. The current set includes an additional 17 interrogatories, which exceeds the 25 interrogatories permitted by Rule 33, Fed. R. Civ. Pro. Defendant will provide answers to interrogatories 1 to 8 below. Defendant objects to answering the remaining interrogatories.

**Responses to Interrogatories**

**Interrogatory No. 1**:

Please explain with specificity whether intermediate draft(s) of the FIRST affidavit of RMO Thuriere was/were exchanged between her and the EEO Investigator. If there was/were intermediate draft(s), number them chronologically in your narrative by the date they were exchanged, and provide their sender – recipient direction. Explain the rationale for these back and forth draft exchanges, and whether telephonic session(s) and/or e-mail exchanges have occurred between any of these draft exchanges, and if so, state between which drafts.

**Response:** Objection. Seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Dr. Thuriere prepared a draft of her declaration on March 3, 2016 and forwarded it to the EEO investigator. On March 23, 2016, the investigator returned the affidavit, asking that Dr. Thuriere make any final corrections. She finalized that draft on March 23, 2016, signed it, and sent it back to the investigator. Defendant has not

located records of intermediate drafts exchanged between the investigator and Dr. Thuriere.

**Interrogatory No. 2**:

Please state with specificity whether intermediate draft(s) of RMO Thuriere's SUPPLEMENTAL affidavit was/were exchanged between the EEO Investigator and her. If there was/were intermediate draft(s), proceed as above with numbering and dating them in your narrative, and provide the exchange directions. Again, state whether telephonic or e-mail exchanges occurred between any of these exchanges and drafts.

**Response**:  Objection. Seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Dr. Thuriere was sent a draft of a supplemental affidavit on March 31, 2016 for review and signature. She signed that on April 4, 2016 and returned it. Defendant has not located records of intermediate drafts.

**Interrogatory No. 3**:

State with specificity whether intermediate draft(s) of HRMO Seybold's affidavit was/were exchanged between her and the EEO Investigator. If there was/were any intermediate versions, number them chronologically by date in your narrative, and provide the sender – recipient. Here again, state whether telephonic or e-mail exchanges occurred, and between which versions.

**Response:** Objection. Seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Seybold was interview by the EEO investigator over the telephone. Seybold was then emailed a draft of her declaration; she made a few edits on that draft and signed it as the final; no intermediate versions were exchanged.

**Interrogatory No. 4**:

Please explain with specificity the reason(s) why the Supplemental Affidavit of Thuriere was not included in the original Investigative File.

**Response:** Objection. Seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, defendant is unable to respond to this interrogatory as the Report of Investigation and the Supplement were prepared by the investigator. Defendant responds that Dr. Thuriere was contacted by the EEO investigator's office on March 29, 2016 and a supplemental declaration was prepared for her signature.

**Interrogatory No. 5**:

Please explain with specificity why the Supplemental Affidavit of Thuriere and "Supplemental Affidavit Package" were provided to Complainant only on July 11, 2016

**Response:** See Response to Interrogatory No. 4.

**Interrogatory No. 6**:

Please state whether Dr. Wright was the Surgery Service Chief at the time when knowledge of his relationship with Dr. Pearson broke out into the public on the Bay Pines VA campus.

**Response:** Objection. Seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, defendant is unable to provide a definite response to this interrogatory. Dr. Wright stepped down at the end of 2013, and his reassignment became official in January 2014. Defendant does not know if the relationship between Pearson and Wright was known at the facility prior to his request for reassignment in October 2013.

**Interrogatory No. 7**:

Please state whether Dr. Wright's request to step down from his position of Surgery Service Chief has occurred after or before news of his relationship with Dr. Pearson had broken into the public on the Bay Pines VA campus.

**Response:** See Response to Interrogatory No. 6.

**Interrogatory No. 8**:

Exhibit C-8 of the IF is the list of certified eligible candidate for the June, 2015 vacancy announcement. That exhibit shows that it was returned to HRMO Seybold, who audited it, and shows that both Complainant and Dr. Pearson are on it.  HRMO Seybold

5

testified that RMO Thuriere had selected Dr. Pearson from that list (see: IF Exhibit B-3, p 115 of 1500).

Therefore:

Please articulate with specificity the legitimate non-discriminatory, non-retaliatory reason (LNDR) **why RMO Thuriere had selected Dr. Pearson over Complainant.**

**Alternatively,** if the Agency's position is that she did not select Dr. Pearson from that list, then:

Please explain how/why HRMO Seybold, the HR specialist in charge of that vacancy was mistaken when she testified that *"a selection was made from the Cert List on June 23, 2015,"* and that *"Dominique Thuriere, Chief of Staff" was the selecting official."*

**Response:** Objection. Seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, defendant explained the reasons for Pearson's selection in response to Interrogatory No. 17 in the plaintiff's first set of interrogatories. Furthermore, as is evident from the Certificate of Eligibles, Thuriere selected Pearson by selecting her name and returning the certificate electronically. In doing so, however, Thuriere did not compare Pearson's qualifications to any of the other candidates on that certificate. By that time, given Pearson's performance during her time as Acting Chief of Medicine and her background in the Emergency Department, Thuriere decided to select her as a direct hire without a competitive selection.

**Interrogatory No. 9**:

Dr. Hong was one of the three-member per-interview screening-panel. Complaint had asked why there were no Candidate Rating Sheets or Scoring Sheets filled out by Dr. Hong (see 2nd request for production No. 16). The Agency stated that the file maintained by Human Resources <u>does not have any</u> interview notes or scoring sheets that were completed by Dr. Hong. However, to say that the recruitment file maintained by HR does not have a given set of records completed by him is not the same as to say that that set of identified records is missing from that file. Please state clearly whether these records, which should have been preserved by HR, are missing (as compared to those attributed to Dr. Syed and RN Williams, the other two panel members).

**Response:** See General Objection above.

**Interrogatory No. 10**:

Please state the date/time when the Agency's contract EEO Investigator has released to the Agency the Supplemental Investigative File that contained RMO Thuriere's supplemental affidavit and his revised ROI. State whether he had sent that File to VA-ORM, or to the VA facility's Counsel, Chief of Staff, or to anybody in management.

**Response:** See General Objection above.

**Interrogatory No. 11**:

Please state the date when the Supplemental Investigative File was sent ex parte to the EEOC Judge (we had eventually discovered the existence of this file in July, 2016).

**Response:** See General Objection above.

**Interrogatory No. 12**:

Please state with specificity whether HRMO Seybold was allowed to read or was offered the opportunity to read, or asked to read Complainant's Affidavit **and/or** Rebuttal Affidavit (**IF** Tab B-1 and/or B-7) **before** her May 12, 2017 decision.

**NB:** In an earlier response to this line of inquiry, the Agency had responded that HRMO Seybold "did not recall" reading Complainant's documents.  However, the question was not whether "she remembered," but whether she was given, or had a chance to read any of these documents.  Please explain with specificity.

**Response:** See General Objection above.

**Interrogatory No. 13**:

The agency has stated that HRMO Seybold recalls reviewing discovery responses prior to her EEOC deposition (see: response to Interrogatory No. 3, of the 2nd set).  Please state with specificity which "discovery responses" were reviewed by HRMO Seybold.

**Response:** See General Objection above.

**Interrogatory No. 14**:

The Agency's position is that when the third posting for the position of Medicine Service Chief appeared in June, 2015, RMO Thuriere had *"already decided to select"* Dr. Pearson. While nobody can say the exact date/time RMO Thuriere had *"decided to select"* Dr. Pearson, the records in HR can show the date/time RMO Thuriere *"has actually selected"* Dr. Pearson. Please state with specificity the date and time when Dr. Pearson was actually selected for the position of Medicine Service Chief.

**Response:**  See General Objection above.

**Interrogatory No. 15**:

The EEO Investigator asked RMO Thuriere in her supplemental affidavit whether the selection process for the third announcement was conducted differently than for the previous two announcements. She volunteered that *"by the time the third announcement was published, I had already decided that I would select Dr. Jennifer Pearson for the position."* Please state whether in her Supplemental Affidavit RMO Thuriere has admitted that in the last minute she had changed or bypassed the Ageny's usual selection process, and hence **engaged in preselection**.

**Response:**  See General Objection above.

**Interrogatory No. 16**:

Regarding inter-institutional relations, in response to Interrogatory No. 10, of Complainant's Second Set, which asked whether the Agency was seeking or receiving

9

fee-back from **USF** in the hiring process for the Medicine Service Chief, the Agency responded: *"Bay Pines did not seek fee-back from **UCF** in the hiring process."* **UCF** stands for **U**niversity of **C**entral **F**lorida.  The question was about **USF**, not **UCF**.  Please clarify that interrogatory.

**Response:**  See General Objection above.

**Interrogatory No. 17**:

HRMO Seybold testified that she had written a report of contact (ROC) regarding Dr. Durr, and had uploaded it into the "recruitment file," and testified that she had given that ROC to the contract EEO Investigator.  Please explain why/how this ROC did not show up in the Investigative File or in the Supplemental Investigative File.

**Response:**  See General Objection above.

**Certificate of Service**

I HEREBY CERTIFY that on April 8, 2019, I served the following document by electronic mail and by U.S. Mail to the following:

Craig L. Berman
Berman Law Firm, P.A.
111 Second Ave. N.E., Suite 706
St. Petersburg, FL 33701
Email: craig@bermanlawpa.com
jennifer@bermanlawpa.com

/s/ Scott H. Park
Assistant U. S. Attorney