UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACQUES DURR, M.D.,                          CASE NO. _____
     Plaintiff,
v.

ERIC K. SHINSEKI, Secretary of
DEPARTMENT OF VETERAN AFFAIRS,
     Defendant.
_____/

## COMPLAINT - JURY TRIAL DEMANDED

The plaintiff, JACQUES DURR, M.D., sues Defendant, ERIC K. SNINSEKI, Secretary of DEPARTMENT OF VETERAN AFFAIRS, and alleges as follows:

## JURISDICTION AND VENUE

1.     Plaintiff invokes the jurisdiction of this Court pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, et seq., as amended, and the Age Discrimination in Employment Act (ADEA), (29 U.S.C. §621 et seq.), and 28 U.S.C. §§ 1331 and 1337. The matter in controversy arises under an act of Congress regulating commerce and relating to discrimination based on national origin and age and further, based upon reprisal for opposing practices made unlawful by the above-identified laws and for participating in proceedings designed to redress discrimination.

2.     Plaintiff is a male citizen of the United States and the state of Florida. He is of Swiss national origin and resides within the Middle District of Florida, where the alleged acts of discrimination and retaliation took place. Plaintiff was 60 years of age at the time

of the adverse employment action, and within the protected classes for national origin and age discrimination.

3.      The Defendant is the Secretary of the Department of Veterans Affairs and is being sued in that capacity.

4.      At all times material to this Complaint, the Plaintiff was an employee as that term is defined within Title VII and the ADEA.

5.      At all times material to this Complaint, the Defendant was an employer as that term is defined within the ADEA.

6.      All conditions precedent to the filing of this Complaint have occurred. Plaintiff filed charges with the Agency and more than 360 days have passed prior to the filing of the instant action.

## FACTS PERTINENT TO ALL CLAIMS

7.      The Plaintiff was employed by the Defendant as a physician and nephrologist from on or about August 13, 1989 until his employment was effectively terminated purportedly during his initial probationary period on or about November 7, 2008.

8.      Plaintiff, a native of Switzerland, is a board-certified specialist in nephrology and internal medicine.  He has taught as a professor at the University of Colorado and the University of South Florida.  He has lectured in various locations around the world on his area of specialty and is highly regarded among his peers.

Case 8:11-cv-01837-AEP Document 1 Filed 08/16/11 Page 3 of 9 PageID 3

9.      Plaintiff is well-qualified and performed his duties successfully as an employee of the defendant, and held important title and status within the VA, including Chief of Nephrology at the VA Medical Center, Bay Pines, Florida.

10.     Plaintiff began his employment with the defendant at the Denver, Colorado VA hospital, where he was a tenured University of Colorado faculty, and served as the chief of the VA renal outpatient clinic since 1985. In 1992 he gave up his tenured position at the University of Colorado in order to pursue a position with the Bay Pines VA Hospital where Plaintiff was responsible for creating and developing the section of nephrology and a dialysis unit, a USF-affiliated nephrology training program, and a clinical and basic renal research program.  Plaintiff also brought in significant peer-reviewed funding. From the date he arrived until his employment was terminated by the actions of Defendant's agents, Plaintiff served as a full-time nephrologist at the Bay Pines VA Healthcare System in Pinellas County, Florida.

11.     Plaintiff has been an outspoken advocate for many ethnic and minority groups throughout his employment at Bay Pines.  By way of example, without intending to be exhaustive, Dr. Durr opposed discriminatory comments relating to doctors of Middle-eastern descent, women doctors and others.  Indeed, Dr. Durr would routinely assist any time he was made aware of discriminatory conduct within the VA system and particularly at Bay Pines.  This was relatively frequent at the Bay Pines facilities. Dr. Durr had also been identified as a potential witness in various EEO Complaints, including, without limitation, one filed by Dr. Claudia Cote in or about October 2005.  Subsequent to her

filing this EEO Complaint, Dr. Durr was targeted by the administration at the VA in large part due to such opposition and participation.

12.     In or about June 2006, Plaintiff became a United States citizen, which gave him the opportunity to have his appointment converted from full-time temporary, to full-time permanent within the VA system.

13.     The higher-ranking administrators within Bay Pines saw Dr. Durr gaining his citizenship as an opportunity to retaliate against him and began a systematic plot to divest him of his employment.

14.     Although Dr. Durr immediately reported his gaining citizenship to the necessary officials, the processing of the necessary paperwork was unreasonably delayed for months.

15.     The Chief of Medicine at Bay Pines did not complete a " Request for Personnel Action" form requesting Dr. Durr be placed on permanent status until August, 2006.  That delay was further complicated by an additional delay in presenting his case to the Professional Standards Board (PSB), which did not occur until November 1, 2006.   Although the Director of Bay Pines signed off on the PSB' s recommendation on November 2, 2006, the VA delayed the approval of the Request for Personnel Action form for over a week.  Thus, the VA took the position that Dr. Durr' s permanent status did not take effect until November 12, 2006.

16.    Defendant placed Dr. Durr on a two year probationary period, in spite of two decades of dedicated service during which Dr. Durr had consistently received very high performance ratings.

17.    The first ever " unsatisfactory" performance rating received by Dr. Durr happened in October, 2008.  That evaluation was manufactured and used as an excuse by the Chief of Staff and Chief of Medicine at Bay Pines to initiate " summary review" proceedings designed to divest Dr. Durr of his employment.

18.    On or about October 30, 2009, a termination letter dated October 29, 2009, was delivered to Dr. Durr, stating his employment will be terminated effective November 7, 2008, just days shy of his completing the two year probationary period which was extended by the VA' s purposeful delay of Dr. Durr' s paperwork.

19.    Dr. Durr appealed the " summary review" termination of his employment in part, on the basis that the termination of his employment came more than a week beyond the two years after the Director of Bay Pines had approved his change in status to " permanent full-time," and several months after the necessary requests had been submitted.

20.    The actions leading up to the termination of Dr. Durr' s employment and each component thereof, were not motivated by legitimate reasons, but were based on Defendant' s desire to retaliate against Dr. Durr for having engaged in protected activity, for opposing practices made unlawful by Title VII, and for participating in proceedings designed to redress discrimination made unlawful by Title VII.

21.     During the time frame in which Defendant was seeking to create a basis to terminate Plaintiff's employment, it engaged in many retaliatory acts designed to enhance the likelihood that a termination action would be upheld.  Without intending to exhaust the examples of such actions, among those taken by Defendant were falsifying charges against Plaintiff such as that he had been Absent Without Leave (AWOL) when the clear documentary evidence contradicted any such assertion; placing extreme and undue pressure upon Plaintiff's immediate supervisor which included threats against that supervisor's employment if he did not support the plot to divest Plaintiff of his employment; misleading co-workers and subordinate employees of plaintiff into believing they were signing a document relating to a different topic, when instead they were signing a petition against Dr. Durr that was being circulated for the purpose of adversely impacting his employment status; and initiating an unwarranted Administrative Investigation (AI).

22.     In or about the summer of 2008 Plaintiff complained to Defendant's Human Resources Department that the manner in which the Bay Pines VA was applying Physician  Market Pay was discriminating against older physicians.

23.     Plaintiff continued to follow up on the issue of Physician Market Pay through approximately September 2008. Among the issues raised by Plaintiff to his Service Chief was the fact that Market Pay appeared to be administered in an age-biased fashion.

24.     As a result of the continuous harassment and mistreatment, and due to the fact that he had no other means to preserve his reputation as a physician, Plaintiff

reluctantly took retirement on the date the termination of his employment took effect. Such retirement constitutes a constructive discharge.

25.     Defendant's actions were done with malice or reckless indifference to Plaintiff's rights, and have caused Plaintiff to suffer harm, including, but not limited to lost wages and benefits, mental anguish, damage to Plaintiff's professional reputation, humiliation, degradation, embarrassment, permanent effects on his health, and severe emotional suffering.

## **FIRST CLAIM FOR RELIEF – RETALIATION UNDER TITLE VII**

26.     Plaintiff re-alleges paragraphs 1 through 25 above, and incorporates them in this claim as if fully set forth herein.

27.     Similarly situated employees who had not engaged in protected activity were treated more favorably than Plaintiff.

28.     Defendants actions constitute reprisal in violation of 42 U.S.C. §2000e-3(a).

WHEREFORE, the Plaintiff prays that this Court:

a)      take jurisdiction over this matter;

b)      award the Plaintiff the amount of all back wages, the value of all benefits, and other compensation to which he is entitled;

c)      grant injunctive relief reinstating the Plaintiff to his former position with the Defendant or, if this Court should determine that reinstatement is not a viable option, grant an award of front pay in favor of the Plaintiff;

d)      grant compensatory damages in favor of the Plaintiff and against the Defendant for Defendant's willful violation of the Act;

e)      award to the Plaintiff the costs of this action, together with a reasonable attorney's fees; and

f)      grant such other and further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF – RETALIATION UNDER THE ADEA

29.     Plaintiff re-alleges paragraphs 1 through 25 above, and incorporates them in this claim as if fully set forth herein.

30.     Similarly situated employees who had not engaged in protected activity were treated more favorably than Plaintiff.

31.     Defendant' s actions were willful in nature and motivated by an intent to retaliate against Plaintiff for opposing acts of discrimination based upon his Age in violation of the ADEA.

WHEREFORE, the Plaintiff prays that this Court:

a)      take jurisdiction over this matter;

b)      award the Plaintiff the amount of all back wages, the value of all benefits, and other compensation to which he is entitled;

c)      grant injunctive relief reinstating the Plaintiff to his former position with the Defendant or, if this Court should determine that reinstatement is not a viable option, grant an award of front pay in favor of the Plaintiff;

d)      grant liquidated damages in favor of the Plaintiff and against the Defendant for Defendant' s willful violation of the Act;

e)      award to the Plaintiff the costs of this action, together with a reasonable attorney' s fees; and

f)      grant such other and further relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF – AGE DISCRIMINATION BASED UPON FAILURE TO PROPERLY COMPUTE MARKET PAY

32.     Plaintiff re-alleges paragraphs 1 through 25 above, and incorporates them in this claim as if fully set forth herein.

33.     Defendant violated the provisions of Title 38 USC §7431(c) in its computation of market pay resulting in a disparate impact on older physicians.

34. Defendant's violation of the provisions of Title 38 USC §7431(c) was willful in nature and motivated by an intent to discriminate against Plaintiff and others based upon their age.

WHEREFORE, the Plaintiff prays that this Court:

a) take jurisdiction over this matter;

b) award the Plaintiff the amount of all back wages, the value of all benefits, and other compensation to which he is entitled;

c) grant injunctive relief reinstating the Plaintiff to his former position with the Defendant or, if this Court should determine that reinstatement is not a viable option, grant an award of front pay in favor of the Plaintiff;

d) grant liquidated damages in favor of the Plaintiff and against the Defendant for Defendant's willful violation of the Act;

e) award to the Plaintiff the costs of this action, together with a reasonable attorney's fees; and

f) grant such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury.

Respectfully submitted,
LEWIS BRISBOIS BISGAARD & SMITH LLP


**s/J. Robert McCormack**
By:  J. Robert McCormack
Florida Bar Number 864791
3812 Coconut Palm Drive, Suite 200
Tampa, Florida 33619-1352
Phone:  813-739-1900; Fax:  813-739-1919
bmccormack@lbbslaw.com
Attorneys for Plaintiff